Dorothy E. Law v. Commissioner.
Law v. Commissioner
Docket No. 36715.
United States Tax Court
1953 Tax Ct. Memo LEXIS 11; 12 T.C.M. (CCH) 1440; T.C.M. (RIA) 54005; December 30, 1953
*11 Deductions: Sec. 23 (a) (1) (A) and Sec. 23 (a) (2). - The petitioner, an officer and stockholder of a corporation, brought suit, individually and as Committee for her mother, to rescind a contract pursuant to which the petitioner's mother had transferred stock in the corporation. Held, legal fees expended by the petitioner were not deductible. Hugh C. Bickford, Esq., for the petitioner. John P. Persons, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined a deficiency in income tax of the petitioner for 1946 in the amount of $1,914.22. The question for decision is the propriety of a claimed deduction of $3,000 for attorney fees paid in connection with *12 certain litigation, the character of which will more fully appear in the findings of fact. Findings of Fact Most of the facts have been stipulated, are so found, and the stipulation included herein by reference. The petitioner is an individual residing in Greenville, South Carolina. Her income tax return for 1946 was filed with the collector of internal revenue at Columbia, South Carolina. The petitioner is the daughter of Charles W. Ellis, who died in November 1918, and of Stella Hutchinson Ellis, who died on June 10, 1947. During 1946 the only surviving children of Charles W. Ellis and Stella Hutchinson Ellis were the petitioner and her sister, Margaret Ellis Anderson. Petitioner's father foundD the Coca-Cola Bottling Company of Greenville, South Carolina, which company owned a franchise to bottle and sell the soft drink known as "Coca-Cola". On January 1, 1941, the outstanding capital stock of the said Coca-Cola Bottling Company was held as follows: Dorothy E. Law (petitioner)
1 1/2 shares
Margaret E. Anderson (petition-
er's sister)
1 1/2 shares
Stella H. Ellis (petitioner's
mother)
139 shares
Qualifying shares issued to other
directors
2 shares
Treasury stock
6 shares
Total stock
150 shares
*13 Thereafter, on November 4, 1941, Stella Hutchinson Ellis transferred 42 shares of the stock to petitioner, 42 shares to Margaret Ellis Anderson, and 14 shares to a trust for the benefit of the children of both petitioner and her sister. From November 4, 1941 to 1944, all of the shares of the capital stock of the Coca-Cola Bottling Company were owned as follows: Dorothy E. Law (petitioner)
43 1/2 shares
Margaret E. Anderson (petition-
er's sister)
43 1/2 shares
Stella H. Ellis (petitioner's
mother)
41 shares
In trust for the children of Dor-
othy E. Law and Margaret E.
Anderson
14 shares
Qualifying shares issued to other
directors with provision that
said shares should be returned
to the corporation and can-
celled if said directors left the
service of the company
2 shares
Unissued stock held in treasury
of company
6 shares
Total stock of corporation
150 shares
On November 4, 1941, the following contract was entered into by petitioner, her sister, and her mother: "Mrs. Stella H. Ellis Greenville, South Carolina. "Dear Mother: "I hereby agree that in the event I decide to sell any of the stock I own in the Coca-Cola Bottling Company *14 of Greenville, South Carolina, I shall give you the privilege of purchasing said stock at the same price before selling to any other person. "Affectionately, "/s/ Margaret Ellis Anderson /s/ Dorothy Ellis Law "I hereby agree to the same. "/s/ Stella H. Ellis" At the time of the execution of said contract, petitioner's mother was president of the Coca-Cola Bottling Company and petitioner and her sister each was a vice president. These three, with a general manager, were the board of directors of the corporation. In 1942 the former general manager of the corporation was discharged and Waddy M. Anderson, the husband of petitioner's sister, was elected a director, secretary-treasurer and manager of the company and took active supervision of the plant operations of the bottling plant of the company. The two qualifying shares of stock mentioned above were issued in the name of Waddy M. Anderson, with the provision that these shares should be returned to Stella Hutchinson Ellis whenever Waddy M. Anderson ceased to be an officer of the corporation. Waddy M. Anderson on October 17, 1945, the date of his death, had in his possession a copy of the contract of November 4, 1941. *15 In December 1943 or early in 1944, Stella Hutchinson Ellis signed a certificate for 21 shares of stock of the company, allegedly transferring these shares to Waddy M. Anderson at an alleged price of $126,695.95. No part of the alleged sales price was paid by Waddy M. Anderson except that he paid the United States the sum of $27,873.51, which was the income tax due by Stella Hutchinson Ellis on the profit of the alleged sale. About November 1945 petitioner's mother became incompetent to handle her affairs, and petitioner and her sister were appointed Committee to handle her affairs by the Probate Court for the County of Greenville, State of South Carolina. Petitioner's main source of income since 1943 was from dividends and salary from the Coca-Cola Bottling Company. In the years 1943 to 1946, inclusive, she received from such sources the following amounts: Year
Dividends
Salary
1943
$32,625.00
$3,000.00
1944
32,625.00
3,000.00
1945
32,625.00
3,166.66
1946
32,625.00
6,000.00
Waddy M. Anderson's will left all his property to his wife and two children, "share and share alike", and naming his wife executrix. The will was probated in the Probate Court *16 of Greenville County, South Carolina. Thereafter, petitioner and her sister disagreed as to the effect to be given the foregoing alleged transfer of 21 shares. Petitioner's sister wanted to recognize the sale and claim payment to the Estate of Stella Hutchinson Ellis, incompetent, of the balance of the alleged purchase price of $98,822.43 from the Estate of Waddy M. Anderson. Petitioner claimed that the alleged sale was illegal and should be set aside. Petitioner and her sister being unable to agree, the petitioner retained counsel. On behalf of the petitioner individually and as Committee for her mother, these attorneys filed suit on October 28, 1946, at the Probate Court of the County of Greenville, State of South Carolina, by claim, asking that the sale be rescinded and set aside. At the time of the filing of said claim the petitioner did not know whether her mother had a will or what she may have provided in her will, if any. On October 28, 1946, petitioner paid her counsel a total sum of $3,000 for their services rendered in connection with the claim. Petitioner's sister opposed the claim and, at the end of 1946, the claim was still pending in the probate court. On July 6, 1949, by *17 consent of the parties the claim was dismissed by order of the Probate Court of Greenville County, South Carolina. In her income tax return for 1946, petitioner reported as gross income the dividends and salary received by her from the Coca-Cola Bottling Company of Greenville, South Carolina, and claimed as a deduction from gross income the sum of $3,000 paid to her attorneys. The respondent, in the notice of deficiency, disallowed the deduction of this sum of $3,000. Petitioner kept her accounts and reported her income on the cash receipts and disbursements basis. Opinion The petitioner summarizes her position by arguing that the expenditure for legal fees was made for the sole purpose of protecting her income from her income-producing property, i.e., her salary and her stock, and that such protection and preservation constituted the management and conservation of such property. She cites the sections of the Internal Revenue Code set forth in the footnote [1] and relies on the interpretation of those sections as gathered from ; ; ; *18 ; ; and , among others, to support her position. The respondent's contentions are that the legal fees are (1) not deductible under section 23 (a) (1) (A) because they represent payments by the petitioner on behalf of the estate of her mother rather than ordinary and necessary business expenses and (2) that they are not deductible *19 under section 23 (a) (2) because the shares which were the subject of the litigation were not the property of the petitioner and produced no dividends for her and hence the legal fees were not expended "for the production or collection of income" or for the "management, conservation or maintenance of property held for the production of income." We think the respondent's determination is correct. In so far as section 23 (a) (1) (A) is concerned, the issue seems to be very narrow. The petitioner was not in business by virtue of her ownership of stock in the bottling company. . And she makes little argument that acting as Committee for her mother constituted a business. If she was in business at all it was that of being an officer (vice president) of the corporation, in which capacity she drew a regular salary. What then is the relationship of the expenditures made for legal fees to her business of being a corporate officer? To bolster her argument on this point she requested us to make a finding of fact that her purpose in bringing suit was to maintain her equality of control of the corporation and to prevent any change of policy that *20 would affect her salary or dividends. We have no made this finding. The petitioner herself did not appear at the hearing and the only testimony on this phase of the matter was elicited from one of the attorneys to whom the fees were paid. His testimony was to the effect that he represented the petitioner in conferences which began after the death of her brother-in-law in October 1945 and extended after the petitioner and her sister were appointed Committee for their mother. At the outset of the conferences, as we view the testimony, the petitioner had no interest beyond having the stock restored to the estate of her mother. Her position was that the transfer was not a valid one and that in view of her mother's health at the time it had been accomplished without her mother knowing exactly what had happened. For that reason the petitioner was interested in having the stock restored and in preserving the status quo as it had been. The sister, on the other hand, was of the opinion that her husband's will should be respected and that the transfer was valid. We conclude from the testimony and from the other facts of record that the primary purpose of the litigation was to void the transfer *21 of the stock to the petitioner's brother-in-law and to restore it to petitioner's mother's estate. At the time the controversy started there was apparently no animosity between the sisters. The petitioner's only interest in the beginning was "in having this stock restored to the estate of her mother". It was not until the adamant position of the sister on this point became clear that animosity developed and "some veiled threat" as to dividends and salary was made. We can accept that at the time suit was filed the petitioner thought it would also be to her advantage as an officer and stockholder to have the stock revert to her mother, but we cannot find that that was the real and primary purpose of the litigation or that the controversy started between the two sisters with that in mind. It is to be noted in passing that the dividend policy of the corporation did not change during the period in question and that the petitioner's salary was actually increased in 1946. As we view it, the connection between the fees in issue and the petitioner's business was only incidental to the main purpose of the suit and, in our opinion, they were not ordinary and necessary expenses incurred by the *22 petitioner in carrying on her business as an officer of the Coca-Cola Bottling Company. What has been said above is equally pertinent to section 23 (a) (2). To be deductible under this section, the immediate purpose of expenses sought to be deducted must have been for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. , affirming . On the facts of record here we think the immediate purpose of the litigation in connection with which the legal fees were paid was to effect the return of property to the mother's estate and not to conserve or maintain income-producing property of the taxpayer. True, the taxpayer might have believed such return of the stock to her mother would be of benefit to the taxpayer since it would restore the status quo previously existing in the ownership of stock in the corporation and that such belief finally tipped the scale in favor of commencing the litigation. But we think that whatever contribution a favorable result of the suit might have made to the production of income for the taxpayer or the *23 conservation of the taxpayer's income-producing property is too remote to justify the claimed deduction. The stock whose ownership was in dispute and which was the subject matter of the suit did not belong to the taxpayer and even if the litigation succeeded she could obtain no more than an incidental business benefit from that success. Questions of the kind here involved are essentially factual and that being so we do not feel that an extended discussion of the cited cases would be helpful. It is sufficient to say that we believe them to be distinguishable. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * * (2) Non-Trade or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩